## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **MARCUS BURTON, Y58071,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **WEXFORD HEALTHCARE SOURCES,** | ) | |
| **CHRISTINE VINEYARD,** | ) | |
| **DR. MEYERS,** | ) | |
| **DR. BABICH,** | ) | |
| **MARY KLINE,** | ) | **Case No. 24-cv-701-DWD** |
| **RENATA LOWERY,** | ) | |
| **TAMI STAUFFER,** | ) | |
| **PAM,** | ) | |
| **JANE DOE 1,** | ) | |
| **JOHN DOES 1-3,** | ) | |
| **CENTRALIA CORR. CTR.,** | ) | |
| **IDOC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Marcus Burton, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Dixon Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while at Centralia Correctional Center (Centralia). (Doc. 1). Plaintiff alleges that the defendants have violated his rights by failing to adequately treat his numerous medical conditions, by refusing him adequate conditions of confinement, and by failing to accommodate his needs in accordance with the Americans with Disabilities Act (ADA, 42 U.S.C. §§ 12132, 12203).

Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.  *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed.  28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff entered the IDOC in the Spring of 2023 at Stateville Correctional Center. (Doc. 1 at 8).  He made staff aware of his medical needs, and was then transferred to Centralia, where he again informed medical staff of his current needs and conditions. Staff also received copies of his records from Cook County Jail.  Plaintiff alleges Centralia did not provide him with a wheelchair, although he also states that his wheelchair came with him from the Jail.  He alleges that he spoke to a non-party nurse during the receiving process who explained the sick call procedures, but he did not see an actual doctor until July 28, 2023, when he saw Defendant Dr. Meyers.  Plaintiff claims that Meyers limited the visit to osteoarthritic pain in his hips but would not discuss "the plethora of other medical issues [he] was currently dealing with."  (Doc. 1 at 8).  Either before or right after this visit, Plaintiff submitted a grievance seeking a consultation with a doctor and complaining that the cells were not ADA compliant because they lacked appropriate handrails, showers, toilets or sinks.

Plaintiff further explains that his grievance alerted officials to his avascular necrosis in his hips, bilateral knee pain, severe excruciating right shoulder and neck pain, headaches, and sleep apnea. (Doc. 1 at 9). He describes a variety of daily activities that are hard, such as washing his feet, putting on socks, or tying his shoes. Plaintiff explains that he is morbidly obese, so it is extremely difficult for him to ambulate without a wheelchair. He alleges that as of February 24, 2024, the only things that have been done are an x-ray of his hips and an order for glasses. He claims he still suffers in severe pain. In association with this grievance, he faults Defendants Wexford, IDOC, Centralia, Dr. Meyers, Christine Vineyard (the healthcare unit administrator), Dr. Babich, and Terri Schulte (the ADA coordinator). (Doc. 1 at 9).

On August 30, 2023, Plaintiff was taken to an outside hospital for the x-ray of his hips. He faults Defendant Pam, the writ coordinator, for failing to arrange proper transportation. He claims Pam and Defendant Terri Schulte (the ADA coordinator) knew he had an ADA assistant, but failed to organize a van that was ADA accessible and could accommodate his wheelchair. Fearing that he would miss out on the appointment, Plaintiff opted to crawl into the van. He was in leg irons and a belly chain, which three corrections officers used to help load him into the van. Plaintiff described the experience as painful, excruciating, and traumatic because he had to twist and contort. (Doc. 1 at 10). When it came time to return to the prison, John Doe 1 was unable for some reason to assist in loading Plaintiff, which left John Doe 2 as the only assistant. Plaintiff alleges this was worse because he had to struggle more, he overexerted himself, and the chains were pulled with greater force. He claims that he severely hurt his right shoulder during

this ordeal, which was already damaged with a torn labrum. He claims with leg and belly chains he cannot perform major life activities.

Plaintiff faults Defendants Pam, Vineyard, and Schulte for failing to accommodate his needs because they scheduled the wrong type of van. He further alleges that their actions increased the severity of his chronic pain when he was required to maneuver into the van, and he claims that this caused him further injury under the ADA. He further attributes these harms to the IDOC, and Centralia. (Doc. 1 at 11).

Plaintiff alleges that in August or September he was moved to the infirmary area of the prison after it was determined that his wheelchair posed some sort of security threat. He alleges that he needed to be transferred to another facility because in the infirmary he could not use the gym or yard. He claims that per Defendant Dr. Babich, Defendant Mary Kline denied him a transfer to another facility because she was not authorized to make transfers directly from one infirmary to another. (Doc. 1 at 11). He alleges that the policy for the infirmary at Centralia only allows recreational activity if medically ordered. Otherwise, there is no recreational activity in the wards. Plaintiff claims that he actually has been told by a doctor that he needs to lose significant weight, and that his placement in the infirmary has prevented him from doing any sort of recreational activity that would help with this goal. (Doc. 1 at 12). Plaintiff faults Defendants IDOC, Kline, Jane Doe 1, Vineyard, Centralia, Wexford, and Dr. Babich for the issues with his access to recreation. Specifically, he claims that they have discriminated against him by excluding him from recreation, and by denying him access to physical therapy, or any other means to lose weight. (Doc. 1 at 12).

On September 28, 2023, prior to an appointment with Dr. Babich, Plaintiff overheard Defendant Tami Stauffer making negative remarks about his weight and implying that he had a goal to gain weight before his release so he could collect social security.  He claims these allegations are untrue, and he is already eligible for social security.  (Doc. 1 at 13-14).  He alleges that Stauffer's conduct violated her oath as a registered nurse, and his rights under HIPAA.  He also alleges the conduct was unbecoming and nefarious.  Plaintiff faults Defendants Stauffer, Wexford, IDOC, Vineyard, Renata Lowery, and Centralia for this issue.

Also in September of 2023, Plaintiff alleges that a wheel on his bariatric wheelchair broke.  (Doc. 1 at 13).  He was given a regular wheelchair, so he made several requests to Defendants Vineyard and Schulte for a new bariatric wheelchair.  He filed at least one grievance about the front wheel breaking off the  regular wheelchair, which caused him to fall to the ground.  He also told Schulte and Vineyard several times that the wheelchair could not support his weight.  They told him a new bariatric wheelchair was on order, but he claims this was not true.  He alleges that a fellow inmate repaired his bariatric wheelchair so that he could get around without falling.  He faults Defendants Dr. Babich, Dr. Meyers, Vineyard, Lowery, Schulte, and Wexford for these issues.  (Doc. 1 at 14).

Despite being told that he could not transfer to another prison, Plaintiff was informed on December 28, 2023, that he was being transferred to Dixon.  (Doc. 1 at 14).  He believes this was a retaliatory transfer because it occurred just days after he had filed a grievance about his broken wheelchair.  He explains that he found this odd because months prior Kline and Jane Doe 1 had indicated he could not be transferred for his

health.  He alleges that Defendants IDOC, Centralia, Vineyard, Kline, and Lowery violated his rights by this retaliatory transfer.  (Doc. 1 at 15).

Plaintiff seeks monetary compensation and injunctive relief.  (Doc. 1 at 16).

Based on the allegations in the Complaint, the Court will designate the following claims:

| | | |
|---|---|---|
| **Claim 1:** | **Eighth Amendment deliberate indifference claim concerning Plaintiff's need for medical care;** | |
| **Claim 2:** | **Eighth Amendment deliberate indifference claim concerning Plaintiff's transportation to his x-ray appointment;** | |
| **Claim 3:** | **Eighth Amendment deliberate indifference claim concerning Plaintiff's access to recreation;** | |
| **Claim 4:** | **Eighth Amendment deliberate indifference claim concerning Plaintiff's broken wheelchair;** | |
| **Claim 5:** | **ADA or Rehabilitation Act claim against IDOC concerning Plaintiff's ability to access recreation;** | |
| **Claim 6:** | **ADA or RA claim against IDOC concerning Plaintiff's broken wheelchair.** | |

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

**Preliminary Dismissals**

Plaintiff named Centralia as an entity and faulted them for many things described in his complaint, but a physical prison as an entity of the state is not subject to § 1983 claims.  *See e.g.*, *Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012) (the state and state agencies are not suable "persons" within the meaning of § 1983).  Accordingly, Centralia Correctional Center is dismissed with prejudice.

Additionally, Plaintiff named Wexford, but he does not make any mention of Wexford in his factual allegations other than to list them in shotgun fashion as responsible for his allegations alongside other individuals.  Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself.  *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).  Plaintiff's complaint lacks any such allegations, so the naming of Wexford is insufficient to state a claim and they will be dismissed.

Plaintiff alleges that Defendant Tami Stauffer violated his rights when she lied or spread rumors about him to Dr. Babich before an appointment.  He argued that this was a violation of her code of conduct as a nurse, that it was a violation of his HIPAA rights, and that it was generally unbecoming conduct.  (Doc. 1 at 12-13).  The Court finds this allegation to be similar to one of verbal harassment, which is generally not actionable under § 1983.  *See e.g.*, *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015) (finding that verbal sexual harassment, accompanied by suggestive gestures, that created a risk both from the

harasser and fellow inmates, was sufficient to proceed beyond initial review); *Brand v. Oglesby*, 2021 WL 4262447 at *1 (S.D. Ill. 2021) (finding a claim insufficient where plaintiff alleged that a guard ran into his cell, verbally threatened him, and indicated he would deploy pepper spray if plaintiff moved). Some threats may rise to the level of cruel and unusual punishment. *Dobbey v. Ill. Dept. of Corr.*, 574 F.3d 443, 445 (7th Cir. 2009). "The test for what constitutes cruel and unusual punishment is an objective one. It is not the actual fear of the victim, but what a "reasonable victim" would fear." *Id.*

In this instance, the Court does not find that Stauffer's alleged comments rise to the level of actionable verbal harassment. To the extent that Plaintiff faults her for violating a professional oath, or for violating his rights under HIPAA, neither theory can succeed. Violations of codes, or even state laws, are not enough to make out a § 1983 claim. And there is no private cause of action under HIPAA. *See e.g.*, *Carpenter v. Phillips*, 419 Fed. App'x 658, 659 (7th Cir. 2011) (HIPAA does not furnish a private right of action). Plaintiff also attempts to name others in association with Stauffer's actions, but any such attempt is futile because there is no respondeat superior liability under § 1983. These allegations about Stauffer's verbal remarks are the only allegations directed at her in the complaint, so Stauffer will be dismissed from this suit for failure to state a claim.

Plaintiff alleges that in December of 2023 he experienced a retaliatory transfer from Centralia to Dixon, despite otherwise mentioning earlier in his pleading that he needed a transfer to a place where he could exercise. He premises his retaliation claim on the assertion that he filed a grievance about his broken wheelchair in early December of 2023, and by late December he was suddenly transferred, despite previously being informed

by Defendants Jane Doe 1, Kline, Babich, and Vineyard that he could not be transferred from one prison infirmary to another.  He characterizes Dixon as the "top ADA facility in Illinois."  (Doc. 1 at 14).  A prison official may not retaliate against an inmate because he filed grievances or a lawsuit under the First Amendment.  *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).  To show retaliation, an inmate must identify protected speech, a deprivation that occurred to deter the speech, and that the speech or protected activity was at least a motivating factor in the decision to take retaliatory action.  *Id.* at 680-81.

Plaintiff's allegations are insufficient to make out a retaliation claim because he did not suffer a "deprivation" or adverse action.  From his own allegations, he wanted a transfer to allow him access to recreational offerings, and he got a transfer to the "top" ADA facility.  As such, it makes no sense to characterize the transfer as retaliatory, and this claim is insufficient as pled.  *See*, *Holleman v. Zatecky*, 951 F.3d 873, 881 (7th Cir. 2020) (a transfer that objectively improves the prisoner's condition would not deter a person of ordinary firmness from engaging in protected activity, and it is not an adverse action).

The Court also notes that some statements in Plaintiff's complaint perhaps could be tied to actionable claims, but because Plaintiff did not elaborate on these issues, they were not designated as claims here.  For example, Plaintiff alleged in passing that his cell did not have things like handrails, or an appropriate toilet or sink.  There are circumstances where this might amount to a claim, but Plaintiff gave so little detail, the Court could not determine if he had a plausible claim in this respect against a discrete defendant.

Plaintiff also frequently named administrators such as Christine Vineyard, the healthcare administrator and Renata Lowery, but he often did little to describe their personal involvement in issues described.  A prison official cannot be held responsible solely because they have supervisory duties, so many of Plaintiff's apparent allegations against these officials and others were insufficient and are not discussed in detail.

Finally, to the extent Plaintiff made mention of ongoing healthcare issues, he is now at Dixon, and such claims should be pursued in a separate lawsuit.  To this end, Plaintiff's request for injunctive relief is likely entirely moot.

<u>Analysis</u>

<u>Claim 1</u>

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010).  A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference.  *Id.*  Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff alleges that upon admission to Centralia, he had a medical intake with a nurse, but he did not immediately see a doctor.  When he finally saw Dr. Meyers on July 28, 2023, he alleges Meyers only addressed his hip issues, and ignored a "plethora" of other medical issues.  He later describes some of his medical issues as necrosis in his hips, knee pain, shoulder and neck pain, headaches due to vision problems and sleep apnea.  Although some of these things could in theory be considered serious health conditions, Plaintiff's allegations against Dr. Meyers, that he simply ignored a "plethora" of conditions are insufficient to sustain a deliberate indifference claim against Meyers.  This single mention of Meyers is Plaintiff's only mention of him in the complaint, so the complaint is insufficient as to Meyers.

Plaintiff goes on to also fault Wexford, IDOC, Vineyard (the healthcare administrator), Dr. Babich, and Terri Schulte (the ADA coordinator) for his unaddressed medical issues, but he is not specific about their role in each condition he has identified.  Liability under Section 1983 is direct, not vicarious.  Section 1983 requires personal responsibility to establish personal liability. Only a defendant's direct, personal involvement in a constitutional violation can result in liability.  *See, e.g., Perez v. Fenoglio, 792 F.3d 768, 781 (7th Cir. 2015)* (stating that "[i]t is well established that '[f]or constitutional violations under § 1983...a government official is only liable for his or her own misconduct.").  "To recover damages against a prison official in a supervisory role, a § 1983 plaintiff may not rely on a theory of respondeat superior and must allege that through their own conduct that they violated the constitution." *Id.*

Wexford is already eliminated for the reasons stated above.  The IDOC is also not subject directly to claims for constitutional violations, like an Eighth Amendment violation, because it is an entity of the state, and is not considered a person for purposes of § 1983.  *See, Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (states and their agencies are not persons subject to suit under § 1983).

This leaves Defendants Vineyard, Dr. Babich, and the Schulte.  Though Plaintiff claims that he alerted these individuals to his need for care via grievances, he does not give any detail about their individual responses or roles in fielding his needs.  The medical records appended to his complaint demonstrate that Plaintiff saw Dr. Babich on at least two occasions in September of 2023, at which time he made recommendations that appear to address many of Plaintiff's concerns.  For example, he directed range of motion exercises for Plaintiff's shoulder.  (Doc. 1 at 20).  Notes from an M.D. visit in October of 2023 show a recommendation for a sleep study.  (Doc. 1 at 27).  A response to his July 2023 grievance also indicated that he was scheduled to see an optometrist for his vision issues, and he was receiving pain medication.  (Doc. 1 at 39).  Given this evidence on Plaintiff's medical conditions, the Court does not find that he has plausibly stated a claim for deliberate indifference against Defendants Vineyard, Babich, or Schulte.

## Claim 2

Plaintiff alleges that on August 30, 2023, Defendants Pam and Schulte failed to arrange adequate transportation to his x-ray appointment because they did not schedule a van that would accommodate his wheelchair, and he suggests John Does 1-3 may have hurt him when loading him without his wheelchair.  (Doc. 1 at 9-10).  Plaintiff also stated

in his complaint that he has "extreme difficulty to self ambulate" without his wheelchair, but he does not state he cannot get around at all, and he admitted he opted to attend the appointment despite no wheelchair accessible van.  (Doc. 1 at 9).  He adds that he hurt himself as he struggled to get in the van.  His most specific allegation against the John Does is that John Doe 1 could not help load him on the return trip, so John Doe 2 faced a greater struggle trying to yank on his restraints to load him.

As to John Does 1-3, Plaintiff's allegations at most suggest negligence or an accident, which is not enough to make out a deliberate indifference claim.  *See e.g.,* *Mielosyk v. Baker*, 2022 WL 4537890 at * 3 (S.D. Ill. Sept. 28, 2022) (finding that a wheelchair bound plaintiff failed to substantiate a deliberate indifference claim against two transport officers who forced him to crawl onto a bus).  He does not plausibly suggest that any of the John Does intended to cause him harm, nor does he even mention John Doe 3 individually.  His allegations against the John Does are insufficient to state a claim.

As for Defendants Pam (the writ coordinator) and Schulte (the ADA coordinator), Plaintiff alleges that they should have realized he needed a wheelchair accessible van because Schulte had previously assigned him an ADA assistant, but this allegation does not really attribute Schulte's knowledge of Plaintiff's condition to Pam, nor does it suggest the two ever communicated about the issue.  As with the John Does, Plaintiff's allegations against Pam and Schulte concerning the wheelchair accessible van might suggest negligence, but they do not rise to the level of deliberate indifference.  Plaintiff does not suggest that either was present on the day of he transport, or that Schulte even knew a transport was being arranged for him.  The evidence presented is insufficient to

suggest a plausible deliberate indifference claim against these two.  Claim 2 is dismissed in full for failure to state a claim.

The Court also did not designate an ADA claim in association with this single transportation incident because Plaintiff did not allege that the transportation issue prevented him from accessing a medical service.   Plaintiff's allegations about the wheelchair and struggling to board the transportation van for his medical appointment are substantially like *Wagoner v. Lemmon*, 778 F.3d 586, 592-93 (7th Cir. 2015), wherein the Seventh Circuit found that an inmate had not stated an ADA or RA claim based on the fact that he was not provided with an accessible van and had to crawl on and off the van.  Additionally, the Court notes that Dr. Babich indicated on September 28, 2023, that Plaintiff would need an ADA van for future medical furloughs.  (Doc. 1 at 21).  Given the available information, the Court does not find that this one-time issue, which ultimately did not prevent Plaintiff from accessing care, is sufficient for an ADA or RA claim.

## Claim 3

Plaintiff alleges that in August or September of 2023 he was moved to the infirmary after it was determined that his wheelchair posed a security risk.  While in the infirmary, he was not allowed to access yard or recreation, activities he contends were necessary to his need to lose weight.   He speaks of Defendants Kline, Babich and Vineyard denying him a transfer to another prison where he could use the yard or gym.  He further alleges Defendants IDOC, Kline, Jane Doe 1, Vineyard, Wexford and Dr. Babich violated his rights and discriminated against him for denying him access to recreation.

The Constitution does not guarantee placement in a particular prison, so Plaintiff cannot proceed against Kline, Babich or Vineyard for a denial of his transfer request.  *See e.g.*, *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (states may move inmates to any prison in the system, and there is no protected interest in a particular prison classification or assignment).

Perhaps Plaintiff intends to suggest that these three knowingly forced him to go without exercise, but even this contention is counterbalanced by the evidence he submitted on his own behalf.  Notably, Dr. Babich indicated that Plaintiff needed to be evaluated for weight loss, and one of his plans after an appointment was to have Plaintiff evaluated for a weight loss home exercise program.  (Doc. 1 at 21).  He submitted a medical services referral form for the same reason that indicated Plaintiff should attend off-site physical therapy to create a home exercise program because extra gym or yard time was not an option.  (Doc. 1 at 25).  This evidence submitted by Plaintiff defeats any plausible suggestion of deliberate indifference with regard to his exercise situation.

As to Vineyard, this is an instance where Plaintiff named her but did not clearly describe her personal role.  Here mere role as an administrator is not enough to proceed against her.  Finally, for Kline, there is no indication she knew Plaintiff was unable to exercise or that she knew he had a medical need to exercise and intentionally disregarded that need.

Despite finding that Plaintiff has not stated a deliberate indifference claim against these individual defendants relative to his access to exercise or recreation, this topic will also be discussed later in association with the ADA and RA.

**Claim 4**

In September of 2023, a wheel on Plaintiff's bariatric wheelchair split open and needed to be replaced.  He was provided with a conventional wheelchair, but believed that was inappropriate due to his weight, so he filed request slips to Vineyard and Schulte about his need for a new bariatric wheelchair.  On December 15, 2023, he resorted to filing a grievance about the same issue.  He alleges that Vineyard and Schulte told him they had ordered a new bariatric wheelchair, but this was not true, and they did not care about his situation.  Attached medical records show that in the first week of December 2023, Plaintiff fell out of the conventional wheelchair because the wheel broke under his weight.  He adds that a fellow inmate fixed his bariatric wheelchair to help him avoid further falls.  Plaintiff faults Schulte, Vineyard, Dr. Babich, Dr. Meyers, and Lowery.

Taking Plaintiff's allegations at face value against Defendants Vineyard and Schulte, it is possible that he has an Eighth Amendment claim concerning their alleged failure to replace or repair his bariatric wheelchair from September to December of 2023, at which time he fell.  Plaintiff does not discuss injuries associated with the fall in the text of his complaint, but the attached medical records show he sought care on two or three occasions prior to his transfer to Dixon.  Claim 4 may proceed against Schulte and Vineyard.

By contrast, Plaintiff may not proceed on this claim against the other individually named parties—Babich, Meyers, and Lowery—because he has not said anything to personally link them to this issue.

**Claims 5-6**

Plaintiff's allegations about his discriminatory exclusion from recreation, and his allegations about his need for a replacement bariatric wheelchair may be sufficient to proceed under the ADA or the RA. Plaintiff only expressly identified the ADA in his complaint, but complaints filed by pro se litigants are read broadly, regardless of the legal labels they affix. Where an inmate seeks monetary damages, the Seventh Circuit has suggested replacing a prisoner's ADA claim with a parallel claim under the Rehabilitation Act, 29 U.S.C. § 701, given the uncertainty about the availability of damages under Title II and because the relief available is "coextensive." *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). Under the RA, damages are available against a state that accepts federal assistance for prison operations, as all states do. *Id.* To state a claim under the RA, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the defendant denied him access to a program, service, or activity or otherwise discriminated against him because of his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015). The Seventh Circuit has concluded that to be wheelchair bound is to be disabled for purposes of the ADA or RA. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672 (citation omitted). A claim under either the ADA or RA cannot be brought against individual employees but may be brought against the department head of the facility in his or her official capacity. *Jaros*, 684 F.3d at 670 & n.2.

For purposes of initial review, Plaintiff has sufficiently alleged that he was a qualified person, with a disability, who was denied access to a program or service in the

form of recreation and an adequate wheelchair. These issues have been contemplated in other cases by the Seventh Circuit as potentially valid grounds for ADA or RA claims. *See e.g., Jaros,* 684 F.3d at 672-73 (remanding for further proceedings on inmate's ADA and RA claims about accommodations needed to access meals, showers, or adequately equipped cells); *Love v. Westville Corr. Ctr.,* 103 F.3d 558 (7th Cir. 1996) (affirming summary judgment in favor of an inmate who was denied access to certain programs and services because he was housed in the infirmary and the programs or services were only offered in other areas); *Wagoner,* 778 F.3d at 593 (inmate might have claimed wheelchair itself was a service). For now, Plaintiff may proceed on Claims 5 and 6. This leaves the issue of the proper defendant. Though Plaintiff associates many defendants with the shortcomings identified in his complaint, the proper defendant is the prison or the head of IDOC. Plaintiff has named the IDOC, so Claims 5 and 6 may proceed against IDOC, but will be dismissed as to all other defendants.

### Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel, and he has provided proof of some of his own efforts to seek counsel. (Doc. 3). He alleges that he included an in forma pauperis application, despite paying the filing fee in this case, but all that he included was a trust fund certification about his current prison account balance. (Doc. 3 at 2, 5). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene,* 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case,

does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Here, the Court cannot yet determine if Plaintiff is indigent, but even assuming he is, it does not find that this case yet warrants the appointment of counsel. Plaintiff's complaint was sufficient to proceed beyond initial review, and the next steps of the litigation will be closely guided by scheduling orders from the Court. At this time, the case is not so complex that it exceeds Plaintiff's abilities. This is particularly so where Plaintiff indicates he has a college education. Accordingly, Plaintiff's Motion for Counsel (Doc. 3) is **DENIED** at this juncture.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 4** of the Complaint (Doc. 1) survives against Defendants Christine Vineyard and Terri Schulte and **Claims 5-6** survive against IDOC. By contrast, **Claims 1-3** are dismissed in full for the reasons stated herein. Additionally, any claim against Centralia Correctional Center is dismissed with prejudice because the entity is not a person subject to suit under § 1983, and any claim against Wexford is dismissed as insufficiently pled. Plaintiff has failed to state valid claims against Defendants Dr. Meyers, Dr. Babich, Mary Kline, Renata Lowery, Tami Stauffer, Pam, Jane Doe 1, and John Does 1-3. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendants IDOC, Centralia, Dr. Meyers, Dr. Babich, Mary Kline, Renata Lowery, Tami Stauffer, Pam, Jane Doe 1, and John Does 1-3.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Christine Vineyard, Terri Schulte, and IDOC: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED**

to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED**.  Plaintiff's Motion for Service of Process at Government Expense (Doc. 2) is **GRANTED** by the issuance of this Order.

Plaintiff paid a filing fee of $400, but the full civil filing fee is $405.  Accordingly, Plaintiff is **ORDERED** to pay the remaining $5.00 within 30 days.

**IT IS SO ORDERED.**

Dated: April 15, 2024

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.